Good morning, Your Honors. Robert Powell. I'm here on behalf of the appellants Robert and Lori Beltran. I would like to reserve three minutes for rebuttal. And as the Court is aware, this is, I believe, a case of first impression involving whether or not social workers are absolutely immune for the warrant to remove a child. A significant part of the allegations in this case were also the exclusion of exculpatory information. Yes, it's our contention that the intent behind Miller v. GAMI, which, of course, relied on Kalina v. Fletcher and Antoine and Byers, was that the Court should look at, in the federal system, should look at the state laws to determine what the functions are of particular individuals. And clearly, in the Miller court decision and bank decision on page 879, they talk about basically dispensing with the in-connection with judicial proceedings test and focusing, as Kalina asked us to do, on the function performed. And I don't believe that the lower court in this decision did that because 820.21, passed by the California legislature in 1995, makes very clear that whatever function you're going to be performing as a social worker, your function does not include submitting false facts to the court, misrepresenting facts, and withholding exculpatory information. Well, if you have absolute immunity, it really doesn't matter what it is that you do. Whether you submit false information, fail to investigate, all of that, if there's absolute immunity, then it's covered. So the question just really is, is there absolute immunity? And unlike — I mean, we're trying to go back to the Middle Ages and determine what social workers' functions are like as to — compared to the people who had immunity in — before there was a Constitution. We're going back to the common law and when there were no social workers. Now, they analogize the social worker to a prosecutor in some respects, in which case he gets immunity or she gets immunity. If we analogize it to a police officer or someone who normally conducts an investigation, you would think there would not be absolute immunity. The problem is, for you, and I'd like you to address this issue particularly, we have a case that's fairly recent, Doe v. Libos, which says, We conclude that Herrera is entitled to absolute immunity for her actions in investigating and presenting evidence to the dependency court. Now, normally a prosecutor is not entitled to absolute immunity for investigating. We say that's not a prosecutor's function. But a social worker, we have said, rightly or wrongly, is entitled to absolute immunity for conducting the investigation. Well, if she's entitled to absolute immunity for conducting the investigation and if it's her function to report those facts to the court, and if under the statute there must be a court document filed that reports those facts, would it make sense to say she's entitled to immunity for everything but signing the document she has to file, reporting on her investigation? No, I do not believe it makes sense to give her absolute immunity under these circumstances, and I do want to distinguish Libos for this Court. Again, rightly or wrongly decided, I think there are some distinguishing points. First of all, in the Libos decision, the Court did not consider Government Code 820.21. Miller v. Gamme would have called for that to have been done. The Libos Court did not do that. In addition, the Libos decision was a summary judgment context. This is a motion to dismiss context. Well, both, as to both of those things, it doesn't matter whether it's summary judgment or not. If we adopted a rule of law that says that social workers are entitled to absolute immunity, whether it was summary judgment or final judgment, I mean, that's our rule of law for this circuit. I agree, Your Honor, that that is a possible result, but if the Court considers that in Dovi Libos it did not consider 820.21, I think it distinguishes Libos from the issues in this case. I point out to the Court that, as I did in my brief, that both counsel on both sides addressed the district court on the issue of analogous police officer cases involving search warrants, because it was ---- You know, if we had to do it from scratch, you know, I think there's a very good argument for saying that investigation shouldn't be covered at all. And, in fact, other than Dovi Libos, every ruling that I have found in the Ninth Circuit distinguishes an investigation from initiation and pursuit. The investigative comments in Libos may very well have been just an inadvertent expansion of the existing law. Well, unfortunately, it's not just a comment. It's just we conclude that, and then it sets forth the rule. But Kalina v. Fletcher certainly, which is directly on point, which has a prosecutor swearing out a warrant, would indicate that if we're going to allow ---- we're going to deny prosecutors. But we also have cases that say a prosecutor who goes out and conducts the investigation doesn't have absolute immunity. That's why I say there's a ---- But then we've said that the social worker does. I see a conflict potentially within the circuit because of that ruling. But at this point, I can only point the Court to Miller v. Gamme, which tells us to consider State laws that might define a function, and A20.21 is very clear on that. But Miller also held that even if these folks lied in prosecuting, and that is in initiating the ward proceeding, that they were absolutely immune from liability. I think only in citation to other cases because that wasn't the context of the Miller case. The context of the Miller case was the placement of the child with deviant sexual offenses. Right. But they ---- but the prosecution dealt with the swearing out, if you will, of the warrant of the proceeding itself, did it not? In Miller? Uh-huh. Not to any great extent, Your Honor. It was mostly about the placement issue there. Right. But if the placement got started by virtue of the filing of papers, and I believe there was an allegation that there were lies in the document that initiated the proceeding. I don't remember that being a seminal part of Miller, Your Honor. Forgive me. I don't ---- I am clear that Miller said that we are dispensing with, after citing Kalina, we are dispensing with the connection to the judicial proceedings comment or that perspective. I understand that, but I thought the context and the facts were very much like what we have in this case. As a matter of fact, my sense is that you really almost have to distinguish Miller in some way to get around your problem here. I believe I understand what the Court is talking about. The placement of the child, the issue that information had been withheld. Right. When placing ---- An allegation that there was fraud or lying involved. When placing the child. But in the Miller decision, there wasn't immunity for them because of, in fact, a State law that required them to give that kind of information to the placement. And I submit ---- But Miller, but I'm just going to read this. Miller recognizes absolute immunity for social workers only for discretionary quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents. Isn't that what we have here? No. Because you're talking there about the filing of the petition. I want to point out to the Court that in this case, we would be exalting form over substance if we said that as part of this warrant process, you submit a petition at the same time. Therefore, you're within the initiation and pursuit. I also wish to point out to the Court when it comes to things that were false, the actual Welfare and Institution Code, Form Section 340, I believe it's contained at page 314 of the ---- Actually, I have it here. It contends, it's page 114 of the excerpt, Volume 1. It contends that a petition had actually been filed when, in fact, it had not. So the case sort of started with a misrepresentation. And, indeed, there is no ---- the distinction here is a warrant process and an initiation of a juvenile petition process. In this case, clearly they weren't required to be together because the petition wasn't filed until the next day. And they aren't. I mean, you could certainly see ---- But, counsel, these people didn't file these things just because they enjoy filing them. It was part of their job, wasn't it? It is part of their job. They felt that this was an appropriate thing to do in connection with this case. They were, in this case, I may be pronouncing his name wrong, T.J. H.I.N. signed and filed the dependency petition. And Mr. Suarez signed and filed the custody petition. They did that as part of their job. Under our circuit law, that is an essential part of their function. It's quasi-prosecutorial. They're trying to take an action in this case to, in quotes, protect the child. Why would that not be covered under our current jurisprudence? I would say because whether or not it's an essential function of their job is not the question. It's the question of whether or not the function is one that was immune at common law when 42 U.S.C. 1983 was enacted. And it is abundantly clear that search warrants, the false swearing out of facts to obtain a search warrant, was not immune at common law. You have an appealing legal argument because Kalina says you don't give immunity to the prosecutor who attests to the charging papers because it's not the function of the prosecutorial service. Normally, those documents can be sworn to by somebody else so that the prosecutor, although he gets immunity for facts he presents, they say when the prosecutor is testifying, he doesn't have absolute immunity, and that when you verify the papers, it's like testifying. So, again, if we didn't have LIBOS, it would seem to me to be fairly clear under Kalina that this would not be the kind of function for which there was absolute immunity. My problem is, what do you do about LIBOS, which gives far more absolute immunity to social workers than to prosecutors? It doesn't make a lot of sense to me, I have to admit. But how do we get around it? Now, you can say LIBOS is wrong, in which case, you know, you should file a bank petition and say, point out to the court that we've got a problem with LIBOS. But as a panel, there's nothing we can do about LIBOS, even if we agree with you. And my problem is, and I only speak for myself, how do we write an opinion that says, yes, social workers have absolute immunity for their investigation, but don't have immunity when they report to the court and certify, here are the results of my investigation. I'll answer it this way, Your Honor. Even if investigation was something for which prosecutors or police officers or social workers was absolutely immune, it is not a question of investigation in this case. And it's distinguishable from LIBOS, which has no search warrant issue. It is a question of the warrant process, the violation of a person's Fourth Amendment rights through the use of the warrant process and how that's done, and whether it was immune at common law when 1983 was passed. I submit to you it was not. And so it's a broad brush to just say investigation. If we take a look at the case. Neither was investigation immune at common law. Pardon me, Your Honor? I said neither was investigation immune at common law. I'm aware of that. And I am aware of the Miller decision, which talks about the three-judge panel and its ability or inability, if you will, to address another three-panel hearing. I point out to the Court that the Miller v. Gammey case was an en banc ruling, which I'm certain you're aware of. And it causes me pause to wonder if LIBOS can have precedential value against Miller v. Gammey, which so clearly called for the Court to look at what the State law says about a function in order to assess whether it's entitled to absolute immunity. I just submit to the Court that Kalina v. Fletcher is very clear, very on point. Supreme Court precedent. I don't think you have to overrule LIBOS in order to agree that Kalina v. Fletcher defines the contours of this case. Do you want to save the rest of your time for rebuttal? Do I have any left? Oh, yes. Thank you. Five minutes. Okay. Good morning, Your Honors. May it please the Court. My name is Melissa Keniakles, and I represent the appellees, social workers Melissa Suarez and Emily Chen, in this matter. The parties do agree that the controlling authority in this circuit is Miller v. Gammey, which affirmed the holding in Myers v. Contra Costa County and in Doe v. LIBOS that Miller v. Gammey. I'm sorry, Your Honor. I misspoke. Miller v. Gammey did affirm the holding in Myers v. Contra Costa County that social workers are entitled to absolute immunity for their conduct in initiating and pursuing child dependency proceedings because such conduct is prosecutorial in nature. The parties, however, are disputing what function the social workers were performing in this action. In filing the warrant petition, the social workers commenced child dependency proceedings under California law. So the warrant petition itself instituted child dependency proceedings in accordance with California Welfare and Institutions Code section 300. In that sense, the filing of the warrant petition is entitled to absolute immunity because it is similar to a prosecutor bringing charges against an accused. With respect to the protective custody warrant, the social worker was not acting in her investigative capacity. This wasn't analogous to a search warrant case. She had already obtained information sufficient in her discretion to make a showing at the initial detention hearing, a prima facie showing that the child was one described in California Welfare and Institutions Code section 300. So the protective custody warrant wasn't to obtain more evidence in support of her petition. The protective custody warrant was to protect the child. And under California Welfare and Institutions Code section 340, whenever a petition is filed, a social worker is granted the discretion to decide whether or not that child can safely remain in the home during the course of the dependency proceedings. And in this case, the social worker exercised her discretion and decided that upon filing of the warrant petition on August 12, 2002, she simultaneously filed a protective custody warrant seeking that the child be taken into protective custody. So in fact, the protective custody warrant was part and parcel to initiating child dependency proceedings. It's not analogous to obtaining a search warrant to look for more evidence to support subsequent criminal charges. Moreover, counsel, in this case, hasn't the State made a determination that children, the most vulnerable members of our society, deserve special protections and have established procedures to enable social workers to do exactly what these folks did at this particular case? What in your sense would be the effect? If we were to strike the immunity of the social worker, do you think that would maybe inhibit somewhat the willingness of the social workers to take actions that might be necessary to protect a child? Precisely, Your Honor. I would agree with your concerns. And I think the policy cited in cases like Kalina and Emler v. Patchman for granting prosecutors absolutely not. So qualified immunity wouldn't be enough for a social worker who's conducting an investigation when it's enough for a police officer who's conducting an investigation? Well, courts, respectfully, Your Honor, courts have determined that prosecutors who get sued frequently, and in this case parents who harbor resentment towards social workers for instituting dependency proceedings, the expectation is that social workers are going to get sued frequently. The lawsuits are going to divert them from their job performance. The potential liability as You know, it's not an all or nothing proposition. Miller v. Gammy asked courts to make a very careful analysis of the role of the social worker. It didn't suggest that social workers are immune, absolutely immune, for everything they do. Miller v. Gammy said you make a functional analysis of the role of the social worker and to the extent that it's like a prosecutor, then you give absolute immunity. To the extent that it's like an investigating officer where it's not part of the court proceeding, then you give qualified immunity. Qualified immunity is not so bad. We're not leaving these poor social workers unprotected, leaving them at the hands of So if you follow Miller v. Gammy, which is a bank court decision, it says that you're supposed to make a very careful functional analysis, and you're supposed to determine whether it's like the common law rule of what a prosecutor did. That's correct, Your Honor, and both parties have cited the case of Colina v. Fletcher, the United States Supreme Court case, that did look at prosecutorial functions at common law. And there were a number of activities that the prosecutor in Colina was granted absolute immunity for, such as, you know ---- And Semme was, including verifying the complaint. Right. And in that case, that was not required by Federal or Washington law to file a document called a Certification for Determination of Probable Cause. However, the prosecutor's filing the information in a motion for an arrest warrant was entitled to absolute immunity. And here, the social worker's conduct in filing a warrant petition and in seeking a protective custody warrant, which incorporated by reference all of the allegations in the warrant petition. So all of the allegations ---- You talked about the prosecutor was not required by statute to do it. Is the social worker required under California law to verify the petition? The social worker is not required. I don't believe the social worker is required to verify the petition. However, there is a judicial counsel form that the petition was drafted on, was signed under penalty of perjury, and the prosecutor brought forth those allegations on information and belief. And so that warrant petition, I think the parties are in agreement that under Miller v. GAMI, instituting the actual dependency proceedings by filing a petition is entitled to absolute immunity. What the parties here are disputing is the next document, which is the application and declaration in support of a protective custody warrant. Unlike the prosecutor in Kalina that swore out entirely new facts and verified it in support of the arrest warrant, the social worker here incorporated by reference her warrant petition, which is the result of her investigation, which is what she has absolute immunity for under the controlling precedent in this circuit. And she didn't include additional facts in her application in support of the protective custody warrant. So while she wasn't required under California law to seek a protective custody warrant, she could certainly have exercised her discretion and sought to institute child dependency proceedings while the child remained at home. She, in her clinical and discretion, in her clinical assessment and in her discretion, decided that the child could not be left at home safely and sought a protective custody warrant. And I think the policy that Justice Smith mentioned that social workers, were they not granted absolute immunity, would err on the side of saying, I'm going to file a warrant petition or a petition, but I'm not going to seek protective custody. And children would conceivably be left in unsafe situations until the juvenile court could hold an initial hearing to make an assessment about whether the child could safely remain in the home. In Miller v. Gammie, right after the part you referred to where they adopt Myers or approve Myers, they say, apparently with approval, at least two of our sister circuits have also recognized that the scope of absolute immunity for social workers is extremely narrow. And then they cite as an example, Snell v. Tunnell, denying absolute immunity to social workers for the function of seeking a protective custody order that did not initiate court proceedings. And I think that the latter part of what you just said, Your Honor, is the key distinction. In Snell v. Tunnell, there were allegations that at a foster home, the foster parents were involved in child prostitution and child pornography. So the children in that foster home were already dependents of the court. And the social worker in that case wasn't seeking to remove as part of initiating child dependency proceedings. They were investigating the foster parent. So in our case, in the present matter, the warrant petition actually instituted, it started the ball rolling to the California Welfare Institution Code Section 300 Proceedings, and the protective custody warrant was part and parcel to that. Whereas in Snell, it was purely for, I mean, they were investigating allegations, really egregious allegations with regard to a foster parent. And so the social worker was not entitled to absolute immunity because she wasn't functioning as a prosecutor in instituting child dependency proceedings. The children were already dependents of the court. And this occurred much later in the process, similar to Miller v. GAMI, where the social worker was not entitled to absolute immunity for making recommendations to the juvenile court with respect to placement of a dependent child in a foster home. That was only entitled to qualified immunity because she wasn't functioning similar to a prosecutor in that situation. She was making a recommendation about which foster home a dependent child should be placed in. That was only entitled to qualified immunity. And just to contrast here, had the social worker been continuing an investigation in seeking a protective custody warrant, if she had not had sufficient information to bring a warrant petition, she could have sought an order authorizing entry into the home, which would have been a different function. In that sense, she wouldn't have been bringing the petition to institute child dependency proceedings. She would have been seeking entry into the home to collect more facts to continue an investigation in order to decide whether to bring a petition. So there are circumstances, I think, where the social worker who wears a couple of hats, unlike a prosecutor, could be functioning in a manner similar to an investigator or a police officer, whereas here her function was not to investigate. The protective custody warrant was not to seek more information to decide whether to file a petition. She had already obtained information from a pediatrician and two gastroenterologists that supported her belief that she could make a prima facie showing that the child was at risk. So she had already decided to file. Kennedy, you just said that, you know, you look at the functions and you see whether they're investigatory or they're more like the prosecutor, which is what I think we said in the bank court and what Kalina seems to say about prosecutors. Can you reconcile that with our holding in Doe v. Libos that they get absolute immunity for actions in investigating? Well, and I think that Doe v. Libos reiterated what was already held in Doe v. Libos in Myers and in Miller v. GAMI, which held that social workers are entitled to absolute immunity for performing quasi-prosecutorial function in connection with initiating and instituting child dependency proceedings. So in order to initiate, unlike a prosecutor who relies on law enforcement to collect facts and to conduct an investigation, a social worker has to wear a couple of different hats. And one is that of an investigator, which is like a cop rather than a prosecutor. That is true. But I think the analogy of social workers to either police officers or prosecutors becomes limited in this situation in that a social worker is conducting her investigation with the eye of whether the child is at risk and whether to bring, to institute child dependency proceedings. So her investigation --- How is that different from a police officer investigating a crime to see whether a prosecution should be brought? Well, the distinction is a police officer can't actually bring charges the way a prosecutor  can, so a social worker is sort of charged, a social worker is given the ability to perform several, to do both functions. But Miller v. GAMI already recognizes that a social worker is not entitled to absolute immunity for everything that she does. It is limited, it is narrowly defined, and the absolute immunity is only for initiating and pursuing child dependency proceedings. Making recommendations about placement, where the child is going to be, in a group home or a foster home, making other such recommendations are not quasi-prosecutorial in nature. So here, even more importantly, the social worker's conduct in seeking a protective custody warrant was not investigative. It was to protect the child. She was not seeking to take the child in order to gather more facts in support of her petition. She had already decided to file a petition. This decision, unlike what is available in the criminal context, it was to protect a child who was in a potentially dangerous situation in the home. And so her seeking a protective custody warrant, the analogy to seeking a search warrant is of limited utility when you consider that she wasn't, she was no longer seeking more facts in support of her petition, but rather she was seeking to have the child taken into protective custody to protect him. And just to add that in the problem with Kalina is Kalina says all of that's fine until you become a witness, and that's no longer a prosecutorial function, and that when you verify the facts for a court pleading, you've become a witness rather than someone who's simply instituting proceedings. How would you answer the argument that Kalina applied here would not give you absolute immunity for verifying the document?  Well, and that I think that if you, looking at actually what was done in this case, the social worker did not include additional facts or additional information in her application and declaration in support of her protective custody warrant. That document incorporated by reference the warrant petition in its entirety. So there were no additional, it wasn't a separate, there weren't separate facts or separate information. There wasn't additional information from informants, for example. It was, it included, it incorporated by reference the warrant petition in its entirety, and I would argue is more akin to the Kalina prosecutor's conduct in filing an information and then a motion for an arrest warrant. And the Supreme Court held that for that conduct, for filing an information and for bringing a motion for an arrest warrant, the prosecutor in Kalina was entitled to absolute immunity. Until the time you verified the facts. Right. And verifying those facts and a certification for determination of probable cause was not required under State or Federal law. And I would, it conceivably was completely unnecessary. So had, in this case, a social worker cannot obtain a protective custody warrant under California law unless a warrant petition is filed. The social worker can't just take custody of a kid if there's no petition. It's required under California law that the social worker file a petition if she wants to seek a protective custody warrant. Kennedy, is it required that the social worker file a, that's, I mean, I think if it's required under law that the social worker make this verification in this filing, that certainly strengthens your argument, because in Kalina that was one of the things the Court stressed, that the law didn't require the prosecutor to perform that function of verifying, that anybody else could have verified it. That's correct. And in that case. Are you representing that under California law? Yes. Under California Welfare Institutions Code Section 340, a social worker, and I just want to clarify, it's not required every time a social worker files a petition that she seek protective custody warrant. A social worker can certainly. When the warrant is sought. Right. When the warrant is sought, it cannot be sought unless a petition is filed. Welfare Institutions Code 340 says whenever a petition has been filed in the juvenile court alleging that a minor comes within Section 300 and praying for a hearing thereon, a protective custody warrant may be issued immediately for the minor. There's no mechanism for a social worker to seek a protective custody warrant if there is no petition filed. She can't get, she cannot get a protective custody warrant if there's no petition. Just about at the end, you're not required to use the last 45 seconds. Well, I think I'll leave it at that, Your Honors, unless there are any further questions. Thank you very much. Thank you very much for your time. You have a little over five minutes. I will try to go quickly through the points raised by counsel. First, I noted the questions from Judge Smith to counsel regarding the desire to protect children, and indeed that is a noble value in our society, no question about that. But the Calabretta Court has also already looked at Fourth Amendment violations involving children and said that it doesn't change the fact that there are constitutional protections in place that need to be adhered to. And I submit to the Court that oftentimes, as Judge Kleinfeld said in his dissent from a certain portion of Dovi Labos, that sometimes an overzealous approach can actually do far more harm than good. And as the facts are laid out in the brief, if true, which are there to be taken as so, and a motion to dismiss, there was significant harm done to this child after being taken. The comment came from counsel several times about these are discretionary acts. These are discretionary acts. The social worker had discretion. It should be noted that the Myers Court and the Miller Court both addressed that, and that's exactly the kinds of acts that they said absolute immunity should not apply to. The Miller Court didn't mention extremely narrow just one time in its decision in terms of whether or not absolute immunity should be afforded social workers, but mentions it approximately four or five times, as I recall. In this case, the warrant petition was not filed before the request for the warrant. In fact, it was filed after, as I said, and it's a part of the excerpts of record in this matter. The idea that social workers, first we go back to the fact that they simply did not exist. Now, that's a blanket proposition, and I understand that the courts have developed a view that, well, we're still going to look at the function, and so therefore it doesn't matter in some sense whether social workers existed because we're going to look at the function. I understand that. But here in this setting, social workers are not prosecutors. They are not prosecutors because of Government Code 820.21, which makes a distinction, and we've included the legislative intent along with the statute in our excerpts of record. Social workers are, in fact, represented by county counsel. They are the prosecutors. There is no need. That in and of itself means inherently most of the functions that social workers do are not going to be prosecutorial nor quasi-prosecutorial because in that system there is a prosecutor. The discussion about whether or not social workers are required to verify a petition, I believe what the statute says is that if they file a petition, it shall be verified. But that has, to my mind, Your Honor, no bearing on whether or not the function of applying for a warrant is something that was immune at common law and has no bearing to whether or not you can swear out false facts to support a warrant. Now, remember, in this case, it goes a step beyond that because what we're telling this Court is and in our pleadings is that social worker Tijin, that's how I pronounce it, Your Honor, actually had absolutely no personal knowledge of anything in that warrant. I believe that certainly in a police officer context that that warrant would fail and liability would endure. And I want to definitely address kind of one of the initial comments of counsel, which was that this is not analogous to a search warrant case. In the excerpts that we'll find, our pleadings, our briefs and the district court, and the court will note that they are entirely, 100 percent in the initial attempt, directed to search warrant cases. Analogy to search warrant cases and the county's argument is even if you excise what is false, excise what has been misrepresented and include what has not been included that should have been, there's still probable cause. Of course, we dispute that and at this stage in these proceedings and the pleading stage in these proceedings, I believe our position should prevail. We should be allowed to conduct the discovery. Counsel, didn't these folks act on a fifth abuse referral? Yes. Four. And you're saying that there was no probable cause for them to act? Absolutely. And in fact, that's probably something that should have been told to the court, is that four previous times the investigations were unfounded, which is, Your Honor, the lowest rung of disposition that you can have when you investigate a case. Unfounded. That's essentially saying someone lied. There's no basis here for this. That in and of itself seems something that a court would want to know, that these people have had these accusations unfounded four times. You're back with the similar, similar allegations. And what I pointed out to the trial court, Your Honor, and I want to point out to this court was once the trial court indicated that it's absolute immunity, it doesn't, that's it. Much like Justice Reinhart started the conversation today, if there's absolute immunity, then it doesn't really matter whether they lied or not. There were a couple of things that we realized later we could have put in the complaint and we didn't. I brought that up to the district court judge and pointed out that if the court is saying they're absolutely immune, then there would be no point in my adding those at this time. And the amended complaint did not because those, these causes of actions were dismissed, the removals based on Suarez and Tijin's efforts in obtaining the warrant. So, Your Honors, I ask you to consider whether Doe v. Labos or any court would, or whether the county's position would be a way that the law is intended to work that children can be removed from their families based on false submissions to a court and leaving out the kind of total story that U.S. v. Standard calls for  I want to point out also that the Wallace Court, Wallace v. Spencer Court, talked about an aspect of removal being a reasonable investigation. And sequentially in this case, this social worker didn't need a court order to speak to the family in the home. She went over and spoke to the mother. She could. She never spoke to the father. And once she left the mother's and spoke to the doctor's and got varying complaints, she never cross-examined that with the mother who had been cooperative from the get-go. Counsel, we're over time, Your Honor. I think we've explored the absolute immunity problem. Yes, and I do thank you, Your Honors, for your time. Thank you. Thank you both. The case is arguably submitted.
judges: Ferguson, Reinhardt, M. Smith